Good morning. Good morning, Your Honors. May it please the Court, Elizabeth Richardson Royer on behalf of the appellant John Boone. The briefing in this case raised a number of issues, and this morning I plan to focus on the above guideline 120-month sentence, which was reasonable on both procedural and substantive grounds. Mr. Boone was sentenced under the fraud guideline, Section 2B1.1, which among all the guidelines skews higher than the district court's sentences imposed around this country. So 50% of fraud defendants received below guideline sentences. Less than 2% received sentences above the guideline range. And of those 2%, the median increase is just 17 months. So by comparison, in this case Mr. Boone received a sentence that was more than 57 months above the high end of the guideline range, more than twice the middle of the range. So his sentence was more than three times the median increase of the less than 2% of fraud defendants who receive above guideline sentence. So just to begin with, we're talking about a very substantial upward variance. Well, let me ask you this, though, because, you know, a lot of white-collar criminals don't have prior records. Your client does. And so would it be your position that your client's misconduct, including his convictions, are insufficient to support the district court's upward departure? Yes, Your Honor. And so the guideline range in this case took into account his prior criminal history, and he had a criminal history category of three, which led to the guideline range in this case. So that's accounted for. And this isn't a double-counting argument, but his conduct and most of those priors happened before 1989 when he was under the age of 26. His conduct was not such that it took him outside the range of other fraud defendants who defrauded a similar number of victims with a similar loss amount with a similar criminal history. There just isn't anything to take him outside the context of a typical fraud case. So you say you're not making a double-counting argument. If the only reason that the judge had given him the higher sentence was the amount of the loss, would that be a double-counting? Not necessarily, Your Honor. Because it was a significant loss as well. It was a significant loss as well, which was what led to the guideline range. And the problem here is twofold. The problem is, first of all, that the district court did not sufficiently explain what led to this extraordinary sentence to allow for adequate appellate review. The court said, first, I'm considering an above-guideline sentence primarily because of Mr. Boone's counterclaim against one of the victims. Later, after back and forth, as the court is aware, Mr. Boone executed a satisfaction of judgment, and the district court said, this basically puts that to rest. And so the explanation that the court gave has disappeared. Well, the court said, if I recall, that he had a thought of imposing the maximum 20 years. And then when Mr. Boone took some step towards the victim VA, then the district court said, I'm no longer going to do the maximum. So he did, I guess he gave half of the maximum. Right. So he did reduce it in conjunction with Mr. Boone's statements and actions. Correct, Your Honor. Though it was within, I mean, certainly well below the maximum that was allowed. The problem is that that was really the only reason that the district court gave for opposing an above-guideline sentence. He gave a fairly extensive explanation of his concerns and deterrence and the long history and the like. Noted some of the 3553A factors as well. And so since the guidelines is only discretionary, there would have to be something seriously wrong. I mean, I think we've held an above-guideline sentence is substantively unreasonable, just in a handful, maybe two or three cases. Correct, Your Honor. So why is this so outstandingly wrong? I think like in Amescua, he had one marijuana conviction 20 years ago, and the court said no. But this doesn't seem like this. He did have a very extensive history of fraudulent activities. I think the main problem here substantively and procedurally is that there was no recognition of the need to avoid unwarranted sentencing disparities. And so when the court gave its explanation, the court didn't attempt to address that factor. The court never explained what made this case atypical. Well, just if, okay. I haven't, you know, of course we don't see the realm of all cases, and you've given some statistics. But it does seem to take a little bit of chutzpah to sue the victims of the fraud that you're charged with and then take a judgment against them. And, you know, and I think on the one hand the court was saying, that really bothers me. I mean, it's like, you know, you poked me in the eye, but then you turned it, too. So can that be considered? Certainly it can be considered. And perhaps it would have supported a high-end sentence or even as the government, who was no fan of Mr. Boone's, was requesting an above-guideline 75-month sentence. But this fact alone doesn't explain this extraordinary variance, which is really outside the realm of normal sentences for fraud cases, particularly given the fact. May I ask a question? Is it your position that there was plain error in sentencing because the judge didn't set forth what the median sentences for this type of fraud were and explain why he was departing from the median sentences? Yes. Because my next question is going to be, give me a case that requires the judge to give that disparity. I do believe there was plain error in this case. I wouldn't put it exactly the way Your Honor did. I know you wouldn't, but what about answering my question? If all the court had done was simply not reflect the median and that were my argument, I would say maybe that's not plain error. But that isn't what happened here. The plain error occurred when the court failed to provide any adequate explanation and then failed to acknowledge the primary goal of the sentencing guideline regime, which is to avoid, to promote uniformity among sentences. But wait a minute. You're saying that the plain error was in failure to explain the disparity. Correct, Your Honor. Correct. But to do that, he first has to recognize there is a disparity. So is it error? Isn't your case based on the idea that he must, as a requirement, show that there's a disparity and then explain why the disparity occurs? He must start at the guideline range and then explain the basis for the sentence. And here the court started at the stat max and worked its way down. So it never even considered the guideline range that we can tell from the record. It certainly failed to explain the upward variance of more than 57 months. So in our position, it is plain error. as an abuse of discretion because despite Mr. Boone's ancient criminal history, mostly more recent misconduct, there isn't anything that takes this case outside the realm of a typical fraud case such that this sentence is supportable. Do you want to save for rebuttal? Thank you, Your Honor.  Good morning, Your Honors. Good morning. Anthony Brown for the United States. Your Honors, I want to just correct a couple statements that the opposing counsel made. Correct. I think I want to add context to them. First of all, the court's required to evaluate the guideline range as a starting point for any sentencing in a criminal matter, and the court did that on excerpts of record 9 through 11. That was where the court started. It's true that Judge Wright said he was contemplating a sentence close to the statutory max. I think he said just shy of the statutory max, but he clearly looked at the guidelines and calculated the guidelines first in the first of the four hearings and then calculated them again in the fourth of the four hearings that were held here. As to the criminal history in this case, the truth of the matter is that the criminal history calculation of three that Judge Wright determined did not actually capture the full criminal history of this particular defendant. And that's because all of the, well, I think three of the four of his prior convictions did not receive any criminal history points. And so that was one of the factors that the court considered when it was looking at the reasonableness of the sentence in this case. Defense counsel repeatedly in the briefing today has argued that Judge Wright did not provide an adequate record for the sentence here, but Judge Wright actually provided a very adequate record for the sentence. Over and above the four hearings that were given to Mr. Boone on excerpts of record 118 and 119, Judge Wright ticked off the 3553A factors and then provided a very thorough description of the factors that he was considering in varying upwards in the case. That included the use of fabricated records to deceive victims into believing that the websites were generating income, the use of several aliases to escape detection by law enforcement, the five-year span of the crime. And this is not a factor that he calculated out on the record, but it is something that he considered over the course of the five years. The actual loss in this case equaled essentially a salary of $250,000 a year. Now, Judge Wright did note during the sentencing hearing that this was not an aberrational event for Mr. Boone. This was not, I think he said in particular, it wasn't as if he had to make payments on his mortgage. This is something that Mr. Boone did over five years. The judge also mentioned that the loss in this case didn't capture the full scope of the fraud. If the court looks at the PSR, you'll note that the restitution amount here was about $1.25 million. The intended loss was calculated very conservatively. It was calculated at $1.9 million based on contracts that were signed by both parties. But if the court calculates the discussions of the amount of fraud that Mr. Boone had, or I'm sorry, the full contract amounts that Mr. Boone talked about with the victims, they go close to $4 million. So calculating even the intended loss here somehow manages to capture the full scope of the fraud that Mr. Boone was contemplating over those five years. The court also mentioned his prior convictions for fraud, theft, and perjury, the fact that he had a pending theft, fraud, and embezzlement charge against him that was filed in Santa Clara County Court, and that was filed during the time that he was on pretrial release. The court mentioned the fact that during pretrial release, the court had to revoke his bond and detain him because Mr. Boone lied repeatedly to pretrial services. Those are just some of the factors that the court mentioned. There are additional factors in this case that also justify the reasonableness of the sentence. Mr. Brown, could I ask you a question? Yes, sir. As I was reading this, Judge Wright was telling Mr. Boone that the skies would fall on him if he didn't do something to benefit VA, the person who was hurt by his fraud. And then he mentioned, at least you can get a satisfaction of judgment. Boone came up with a satisfaction of judgment, and then the judge said, well, that's not enough. So isn't there some basic element of unfairness of moving the target here? No, Your Honor. In fact, that's not exactly what happened. The judge did say, Mr. Boone, I want you to do something about this. And what happened over the course of the next three hearings is that Mr. Boone came in with a satisfaction of judgment. The parties realized that the third hearing in this case. But wait a minute. The judge was the first one who mentioned the satisfaction of judgment. That's correct, Your Honor. All right. That was a suggestion of one of the ways that Mr. Boone could rectify the fraudulently obtained judgment. Well, in fact, it wasn't a judgment. Let me go back to what I was saying earlier, which is the parties realized during the third sentencing hearing that, in fact, no judgment had actually been entered in the state court action. And so although Judge Wright had suggested that Mr. Boone get a statement of decision, I'm sorry, a satisfaction of judgment, what they were really contending with was a statement of decision that had not been converted into a judgment in the case. So at that point, what Mr. Boone suggested to the court was that he would file or fill out in hand to the victim a statement of decision, which is in fact what happened. And then Judge Wright said, well, that takes care of that victim. And then, as Judge Okuda pointed out earlier, Judge Wright actually, you know, sentenced Mr. Boone to significantly less than he had contemplated or talked about at the beginning of the sentencing hearings. So what he did was to get a statement of decision in favor of the plaintiff and against the defendant on the counterclaim. That's correct, Your Honor. And he also handed to the to the to V.A., the victim in the case, a declaration that said that in the event that any judgment was entered, he would never seek satisfaction of that judgment. And I think that satisfied Judge Wright at that point. But you're saying Judge Wright started out if if I'm understanding your argument, you're saying he was started out and was sort of talking aloud to the defendant and said, hey, I'm thinking about giving you the max of 20 years. Right. And I'm really bothered. You know, if you want to help yourself, one of the things you can do to help yourself to move me off that mark is, you know, don't, you know, get rid of this. You know, don't additionally harass this victim that's already lost money. And now you have a judgment against the victim and all of the implications. So there are some it gets continued and their efforts that to kind of reach that. And so then it goes down from 20 to 10. Right. That's correct. And so I think, you know, the court has to look at what happened over the course of four hearings here. Sentencings are occasionally and actually frequently fluid matters because issues come up that have to be dealt with on the on the fly. Sometimes claims are made and it's not entirely clear what the factual basis for those claims are. This is a perfect example of the fluidity of a sentencing that happens in a criminal matter. When he kind of talked out loud, he said, this really bothers me. I think he and he's right to do that. It's one of the factors that he has to consider under thirty five fifty three a the history and characteristics of the defendant. And Judge Wright was talking out loud. He clearly indicated to Mr. Boone that this was a factor that disturbed him. And he gave Mr. Boone an opportunity to correct it. In the end, defense counsel is claiming that that the judge bullied Mr. Boone into giving up that claim. In fact, I think what happened is Judge Wright gave him a choice. He said, we can move forward. You don't have to take care of that, but it's certainly going to help you out if you do. And that's perfectly legitimate under thirty five fifty three. And it's perfectly legitimate under due process or however else this claim is framed. Let me get back to the substantive unreasonableness issue. You were going through some of the things the district court considered, but to the extent those were captured in the guidelines of criminal history and the like, you still end up with the sentencing commission's recommendation. This is the the guidelines range. And the Supreme Court has made clear that the further you are over or outside of the guidelines range, the more explanation of why it's different than what the guidelines, what the commission was thinking a court needs to do. What where did the district court indicate why this offense was different than what the guidelines was was capturing? Was it any of the things you went through earlier or was that already captured in the guidelines range? Some of the factors were captured. Others were not. As I mentioned earlier, much of Mr. Boone's criminal history was not captured in the guidelines. Is that because it was too old? It was too old. So it didn't he didn't receive criminal history points for that. But rightly so. Even so, under thirty five fifty three, the court can take that into and should take that into consideration, especially where, as here, Mr. Boone has shown a pattern of crimes that involve fraud, forgery, embezzlement and dishonesty. So that was one of the factors that Judge Wright noted. Another factor that he talked about was the scope of the fraud. And I talked about that earlier, how the guideline range actually was calculated very conservatively in this case. The repeated other factors that he mentioned that are not captured in the guidelines involve the repeated violations of his pretrial release and the nature of those violations. He was dishonest with pretrial services, both about his use. I see my time is up. Should I finish answering? Both about his use of the Internet and about the fact that he had his his employment had been terminated. And then finally, the court did not impose a sophisticated means enhancement in this case, but talked about factors that could have supported a sophisticated means enhancement, including the use of multiple bank accounts and aliases. Thank you, Your Honor. Judge, did you have any additional questions? All right. Thank you. Thank you. Thank you, Your Honors. I want to touch briefly upon the judicial interference in sentencing claim only to explain that Judge Wright really wasn't satisfied. He said, you know, go ahead, do it your way. It's a lovely piece of paper. I wanted to have it vacated. It looks like once again, the onus falls on the victim. If that's as much as she's going to get fine. I mean, over and over again, he indicated that what he had wanted was for Mr. Boone to file a motion to set aside the statement of decision, which didn't happen. So he wasn't happy with the result. And that is one of the factors that this court and Gonzalez Melchor, you know, explained was the reason the judges shouldn't participate in sentencing was the risk that a judge will want something to happen, will ask for something to happen, and then that the ill will toward the defendant will arise when the defendant is unable to perform, which is what happened in this case. And then I just wanted to before I run out of time. Certainly, Mr. Boone's convictions were older. Some of them were not assigned criminal history points. But what I think maybe doesn't come across in reading the PSR is that although very short custodial sentences were imposed force for the three earliest offenses, Mr. Boone never served any time in jail. He did work furlough to serve those sentences. And although he had a prior criminal history, he had never served any time. So it wasn't a case where, you know, some cases the judge says a five year sentence wasn't enough to deter you in the past. So I'm going to give you more. This is a person who had never done any time. So 10 years really was well and above what was necessary for deterrence. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bea, Ikuta